PERLE MAY DRUHL and Maurice Druhl, a Minor, by John H. Lewis, His General Guardian, Respondents, v. EQUITABLE LIFE ASSURANCE SOCIETY, a Foreign Corporation, Appellant.

(— A.L.R. —, 218 N. W. 220.)

**Insurance — accident causing disease which causes death — cause of death within double indemnity clause of life insurance policy.**

1. In an action on a life insurance policy providing for double indemnity in event the death of the insured results "solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means," and is not the result of or caused directly or indirectly "by disease or illness of any kind, physical or mental infirmity," it is *held:*

When an accident causes a diseased condition which, together with the accident results in death, the accident alone is to be considered the cause of death within the provisions of the policy.

**Insurance — "physical infirmity" defined.**

2. The term "physical infirmity" as used in the policy means something that materially impairs, weakens or undermines the constitution of the insured, tends to reduce his powers of resistance, and thereby enhances the risk of death in case of injury.

**Insurance — in instant case evidence supports contention that death was caused by accident.**

3. In the instant case it is held that there is substantial evidence from which the jury could find that the death of the insured resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means and that death was not caused directly or indirectly by physical infirmity or disease or illness of any kind.

Opinion filed March 5, 1928.

Accident Insurance, 1 C. J. § 75 p. 430 n. 91; § 126 p. 452 n. 21; § 334 p. 504 n. 48; p. 505 n. 50.

Note.—(1) As to what constitutes external and visible signs of injury within exemption provisions in accident insurance policy, see annotation in 49 L.R.A. (N.S.) 1022; 39 A.L.R. 1011; 14 R. C. L. 1251; 3 R. C. L. Supp. 368; 6 R. C. L. Supp. 874.

(2) As to meaning of "bodily infirmity" in accident insurance policy, see 14 R. C. L. 1245; 3 R. C. L. Supp. 366; 4 R. C. L. Supp. 951.

From a judgment of the District Court of Ward County, *Lowe,* J., defendant appeals.

Affirmed.

*Dudley L. Nash,* for appellant.

"The insurer is not to respond when the death is caused directly or indirectly by disease, nor when it is caused in part by disease." Commercial Travelers Mut. Acci. Asso. v. Fulton, 24 C. C. A. 654, 19 Fed. 423, affirmed in 35 C. C. A. 493, 93 Fed. 621. See also Stanton v. Travelers Ins. Co. 83 Conn. 708, 34 L.R.A.(N. S.) 445, 18 Atl. 317; Illinois Commercial Men's Asso. v. Parks, 103 C. C. A. 286, 179 Fed. 794; Binder v. National Masonic Acci. Asso. 127 Iowa, 25, 102 N. W. 190.

"When the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is sufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." Randall v. Railroad Co. 109 U. S. 482.

"The burden of proof is not sustained by showing facts equally consistent with or against recovery." Bingham v. Continental Casualty Co. (Ky.) 293 S. E. 968.

*L. J. Palda, Jr., C. E. Brace,* and *Robert W. Palda,* for respondents.

"It is only a fair rule which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer." Manufacturers' Acci. Indemnity Co. v. Dorgan (C. C. A.) 58 Fed. 945.

"Death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous." Delaney v. Modern Acci. Club, 121 Iowa, 528, 63 L.R.A. 603, 97 N. W. 91.

"An ailment which produces no disorder, and of the presence of which the person affected is unconscious, can hardly be said to be a disease within the meaning of an insurance contract." Continental L. Ins. Co. v. Yung, 113 Ind. 159, 3 Am. St. Rep. 630, 15 N. E. 220.

"An injury which might naturally produce death in a person of a certain temperament, or state of health, is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death

comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes." Freeman v. Mercantile Mut. Acci. Asso. (Mass.) 30 N. E. 1013.

CHRISTIANSON, J. Plaintiffs brought this action as beneficiaries in a policy issued by the defendant upon the life of Amiel Druhl. The insured was the husband of the plaintiff Perle May Druhl and the father of the plaintiff Maurice Druhl. By the terms of the policy the defendant insured the life of Amiel Druhl and agreed to pay to the beneficiary named in the policy the sum of $3,000 upon due proof of the death of the insured. The policy further provided:

"In event of death from accident the society agrees to increase the amount so payable to six thousand dollars upon due proof that the death of the insured resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means."

"The increased amount of insurance . . . in case of accidental death shall be payable upon receipt of due proof that the death of the insured occurred while this policy was in full force and effect, and resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, provided that death shall ensue within ninety days from the date of such injuries and shall not be the result of or be caused directly or indirectly by self-destruction, sane or insane, disease or illness of any kind, physical or mental infirmity, any violation of law by the insured, military or naval service of any kind in time of war or by engaging as a passenger or otherwise in submarine or aeronautic expeditions."

The insured died July 17, 1925. The plaintiffs claimed that his death was due solely to accidental causes and that they were entitled to receive from the defendants the sum of $6,000 under the provisions of the policy providing for double indemnity in case of accidental death. The defendant admitted that the beneficiaries were entitled to receive the face of the policy, namely, $3,000; but denied that there was any liability under the provisions of the policy providing double indemnity for accidental death. The sole question in controversy in this action is whether the plaintiffs are entitled to recover the double indemnity.

This question was decided in favor of the plaintiffs in the trial court and the defendant has appealed.

It is the claim of the plaintiff that the death of the insured was caused by a blow upon his abdomen by the handle of a plow which he was guiding—the plow striking a rock or some other obstruction while being drawn by four horses, with the result that the handle of the plow struck the insured in the abdomen inflicting injuries from which he died. The accident occurred July 7, 1925, and the insured died July 17, 1925. The evidence adduced shows without dispute that the insured received severe injuries on July 7, 1925, while guiding a plow which was being drawn by four horses, the handle of the plow striking the insured in the abdomen. The insured was brought to Minot and placed in a hospital on the afternoon of the following day. Shortly thereafter an operation was performed for appendicits. The doctors performing this operation found that he was not suffering from this disease; and while he was under the same anaesthetic they performed another operation (apparently of an exploratory nature), the exact nature of which does not appear in the evidence. The insured died July 17, 1925. After his death an autopsy was performed and in the abdominal cavity there was found a blood clot about three inches in diameter and a complete intestinal obstruction involving the small intestine approximately within three feet of its junction with the large intestine. The doctor who performed, and those who observed the performance of, the autopsy testified that it was found that the insured, a number of years prior thereto, had had an operation for hernia and that the obstruction of the bowel was due to the twisting of the small bowel around a band of adhesions involving the small bowel at the side of the obstruction and the so-called greater omentum. The greater omentum, according to the medical testimony, does not normally adhere to the small bowel; but in this case it did so adhere and the coils of the bowel were in turn attached to one another. The sole question involved here is whether in the circumstances it can be said that the death of the insured was due to such causes as to bring it within the above quoted provisions of the policy providing for double indemnity in case of accidental death.

The doctor who performed the autopsy had also been called to see the insured some hours before his death. He testified that in his opinion

the blood clot was caused by the blow from the plow handle at the time the insured was injured. He further testified that, basing his opinion upon the assumed facts as to the previous condition of health of the insured, the infliction of the injury by the plow handle and the condition of the insured immediately following and continuing up to the time of death and the physical facts disclosed by the examination of the abdominal cavity upon the autopsy, the obstruction of the bowels was occasioned by the blow of the plow handle; and that the toxemia or poisoning of insured's system resulting in his death was due to the obstruction of the bowel. On cross-examination the doctor testified in part:

"Q. These adhesions, doctor, that you were talking about as being old adhesions, could they not be a cause of the obstruction? A. They were factors, but not the exciting factors, in my opinion. Q. You mean in your opinion the man could be in good health and still have those adhesions? A. Perfect health. Q. So that the blow then, in your opinion, was not the sole cause of the obstruction? A. I would say that it was the exciting cause—that this patient had enjoyed health, in my opinion, for eight years prior to this, and along came the blow which was in my opinion the exciting cause."

And on redirect examination the doctor testified that in his opinion "the blow was the immediate and existing cause of the injury or cause of Mr. Druhl's death." The case was submitted to the jury upon instructions, the correctness of which is not challenged. The court charged that the plaintiff had the burden of proving the cause of action by a fair preponderance of all the evidence and that if the plaintiff had failed to so prove it, a verdict must be returned for the defendant. The court further charged: "Before you can find for the plaintiff you must find that the death of Amiel Druhl resulted solely from bodily injuries, directly, exclusively and independently of all other causes by external, violent and purely accidental means, and that death did not result or was caused directly or indirectly by disease or illness, or any kind of physical infirmity."

It is the contention of the defendant on this appeal that under the evidence there is no cause of action; that the death of the insured did not result solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely ac-

cidental means and that the evidence shows that such death was the result of or caused directly or indirectly by disease or physical infirmity.

These contentions present the following questions: Was there substantial evidence from which the jury could find that the death of Amiel Druhl "resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means;" that such death ensued within ninety days from the date of the injury and was not the result of or caused directly or indirectly by disease or illness of any kind or by physical infirmity? The questions thus presented involve a construction of the policy provisions quoted above.

The policy in suit was issued less than a year before the death of the insured. It was issued upon a written application wherein the insured was required to answer such questions as were propounded to him by the soliciting agent. Space was provided in the application blank wherein an applicant might indicate whether he did or did not want "double accident indemnity." The application contained no indication as to what, if any, restrictions would be placed upon such proposed accident insurance. The insured submitted himself for medical examination and was examined before a medical examiner designated by the company and he there made answers in writing upon blanks prepared by the defendant to such questions as were then propounded to him. There is no contention that the insured made false answer to any question propounded to him by the company, it's soliciting agent or examiner as to whether he then was, or had been, afflicted with any mental or physical ailment or infirmity. The insurance company accepted the application for insurance and issued a policy providing for double indemnity in case of accidental death; and the policy shows upon its face that the insured was charged and paid an additional premium for such indemnity.

The undisputed evidence shows that the insured was in excellent health immediately prior to the injury and had been so for a number of years prior thereto. While there is some evidence by way of opinions of experts to the contrary, the weight of the evidence is to the effect that the direct and proximate cause of the death of Amiel Druhl was the injury sustained by him when he was struck by the plow handle. True, the blow itself did not result in death, but it resulted in the obstruction

of the bowel, which in turn caused the toxemia or poisoning of his system, resulting in death. In order to render the injury one caused by external and violent means it is not necessary that the external means should itself cause death; it is only necessary that the cause of death shall be external to the person although it acts internally. 4 Cooley, Briefs on Ins. p. 3161. And when an accident causes a diseased condition which, together with the accident results in injury or death, the accident alone is to be considered the cause of the injury or death. Penn v. Standard Life & Acci. Ins. Co. 158 N. C. 29, 42 L.R.A.(N.S.). 593, 73 S. E. 99; Foster v. North American Acci. Ins. Co. 176 Iowa, 399, 158 N. W. 401; Kangas v. New York L. Ins. Co. 223 Mich. 238, 193 N. W. 867; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 122, 155 Fed. 54.

"In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, is a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the *causa causans,* to the accident alone." Western Commercial Travelers' Asso. v. Smith, 40 L.R.A. 653, 29 C. C. A. 223, 56 U. S. App. 393, 85 Fed. 401. See also Berry v. United Commercial Travelers, 172 Iowa, 429, L.R.A.1916B, 617, 154 N. W. 598, Ann. Cas. 1918A, 706.

In this case there was ample evidence to justify the jury in finding that the obstruction of the bowel was caused directly, exclusively and independently of all other causes by the blow which Druhl received from the plow handle; and that the obstruction of the bowel was the direct cause of death.

But it is contended by the appellant that the death of Amiel Druhl was the result of disease or physical infirmity and that such death did not result solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means. In short, it is contended that the adhesions were a cause contributing directly to the death and that consequently the insurer is relieved from liability under the second provision of the policy, quoted above.

There is no basis for the contention that the insured died as a result of any disease or illness. The great weight of the evidence is to the

effect that he was in perfect health at the time the accident occurred and had been so for a number of years prior thereto, and the evidence justifies the inference that but for the injury received from the plow handle he might and probably would have continued to live out the full term of his life expectancy. It is true the death of the insured was caused by toxemia, or poisoning of the blood, but the evidence amply justifies the conclusion that the toxemia was caused directly and solely by the obstruction of the bowels, and that the obstruction of the bowels was due directly to the blow received from the plow handle.

Nor do we believe that the adhesions referred to in the evidence constituted a "physical infirmity" as that term was used in the insurance contract. The policy was prepared by the insurance company. It is a fundamental rule that contracts are to be construed most strongly against those who prepare them, and where a policy provision emanating from the company is capable of two meanings the one most favorable to the insured will be adopted. Travelers' Ins. Co. v. Murray, 16 Colo. 296, 25 Am. St. Rep. 267, 26 Pac. 774.

It will be noted that the provision relating to "physical infirmity" applies only to death and does not apply to the injury, that is, the provision is to the effect that in case the insured is injured and dies within ninety days from the date of such injury the company shall not be liable for the ensuing death in case the *death* is the result of or caused directly or indirectly by physical infirmity. It does not seem reasonable to believe that when the parties spoke of "physical infirmity" they had in mind any slight derangement, malformation or susceptibility to disease, of which the insured was ignorant, which even the medical examiner of the company apparently did not discover, and which probably no other physician could have discovered. There are indeed few individuals but have some slight physical weakness and if the term "physical infirmity" is to be given the construction contended for by the appellant, then policies purporting to give insurance protection and yet exempting from liability in case the insured at the time of the injury has any physical or bodily infirmity would be a veritable fraud upon the insuring public. It seems reasonable to believe that by the term "physical infirmity" the parties had in mind settled disease, ailments or derangements of such nature and character as had a direct tendency to weaken and undermine the constitution of the insured, reduce his

powers of resistance, and thereby enhance the risk of death in case of injury. Manufacturers' Acci. Indemnity Co. v. Dorgan, 22 L.R.A. 620, 7 C. C. A. 581, 16 U. S. App. 290, 58 Fed. 945; French v. Fidelity & C. Co. 135 Wis. 259, 17 L.R.A.(N.S.) 1011, 115 N. W. 869; Black v. Travellers' Ins. Co. 61 L.R.A. 500, 58 C. C. A. 14, 121 Fed. 732; Bernays v. United States Mut. Acci. Asso. (C. C.) 45 Fed. 455.

We are of the opinion that the evidence in this case warranted a recovery under the policy. In short, that the evidence justified reasonable men in concluding that the death of Amiel Druhl resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, to wit; the accidental blow by the plow handle; and that at the time he received such blow he was a man in good health, not afflicted with physical infirmity or suffering from any disease or illness, within the purview of these terms, as used in the policy.

The judgment appealed from is affirmed.

NUESSLE, Ch. J., and BIRDZELL, BURKE, and BURR, JJ., concur.